UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, ) ) ) ) Plaintiff, ) ) v. ) ) ) ) BRAND ENERGY SERVICES LLC, *et al.*, ) ) Defendants. ) ) | Civil Action No. 09-620 (RMC) (consolidated with Civ. No. 09-1128 (RMC)) |

**MEMORANDUM OPINION**

In the construction industry, work jurisdiction disputes require speedy arbitration due to the fact that many work projects are not long term. Forcing court litigation by refusing to comply with an arbitration award is, presumably, intended to be onerous. Refusing to comply with an arbitration award can have negative consequences, as here where the party who refused to comply with the arbitration award lost in court and is contractually obligated to pay the opposing party's fees and costs.

Seeking to confirm an arbitration award in its favor on a work jurisdiction dispute, Laborers' International Union of North America ("LIUNA") brought this suit against the unions whose members had been awarded the work: Pacific Northwest Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, Carpenters Local 1849, and Millwrights Local 1699 (collectively the "Carpenters").[1] On August 30, 2010, the Court granted

---

[1] LIUNA also sued the employer who failed to assign the work to LIUNA, Brand Energy Services LLC ("Brand"). *See* LIUNA's Resp. to Order of the Court [Dkt. # 35] (setting forth

LIUNA's Amended Petition to Confirm Arbitration [Dkt. # 3], confirmed the March 23, 2009 Arbitrator's Award, and granted LIUNA's request for attorneys' fees and costs. *See* Op. & Order [Dkt. ## 33 & 34]. All that remains is for the Court to determine the proper amount of attorneys' fees and costs.

## I. FACTS

When LIUNA filed suit for enforcement of the arbitration award, the Carpenters filed a separate counter suit, Civil Case No. 09-1128, against LIUNA,[2] seeking a declaratory judgment that the Carpenters are not bound by the award. The Carpenters originally filed Case No. 09-1128 in the Western District of Washington, but the case was transferred here and consolidated with this one. The Court then stayed the consolidated cases pending a decision of the National Labor Relations Board ("NLRB") in a parallel case, *Pacific Northwest Regional Council of Carpenters*, 19-CD-499. On June 11, 2010, the NLRB issued its decision in that parallel case, finding that the NLRB did not have jurisdiction over the work dispute because all parties were bound by a Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan"). *See* Notice [Dkt. # 26], Ex. A (June 11, 2010 NLRB Decision) at 6; Am. Pet. to Confirm Arbitration [Dkt. # 3], Ex. A (Plan). "In signing the Participation Agreement, Regional Carpenters was not merely acting as an agent for its locals, but rather obtained its own rights and obligations under that agreement. Accordingly, as a party to the Participation

---

proof of service). Brand has not appeared or filed any pleadings in this case, and LIUNA has not pursued Clerk's entry of default against Brand. Thus, simultaneously with this Opinion the Court will issue an Order to Show Cause to LIUNA why Brand should not be dismissed for lack of prosecution.

[2] The Carpenters also brought suit nominally against Brand.

Agreement, Regional Carpenters is bound to the Agreement's requirement that the Plan be used to resolve jurisdictional disputes." NLRB Decision at 6.

The Plan Arbitrator previously had issued a decision that the Carpenters were improperly performing work that should have been assigned to LIUNA, and ordered Brand to assign the scaffolding work in question to LIUNA. *See* Am. Pet. [Dkt. #3], Ex. E (Mar. 23, 2009 Arbitrator's Award) ("Arbitrator's Award") at 20. Because the NLRB determined that the parties were bound by Plan arbitration and because the Arbitrator had decided the work jurisdiction dispute, this Court ordered the parties to show cause why the Arbitrator's Award should not be confirmed. In response, the Carpenters voluntarily dismissed their countersuit, Civil Case No. 09-1128, and filed notice that they did not oppose the enforcement of the Arbitrator's Award. *See* Voluntary Dismissal [Dkt. # 28]; Notice of Non-Opposition [Dkt. # 27]. Thus, the Court granted LIUNA's Amended Petition to Enforce Arbitration as conceded. *See* Op. & Order [Dkt. ## 33 & 34].

The Court also granted LIUNA's request for attorneys' fees and cost, pursuant to the Plan. The Plan provides, "[a] party seeking enforcement of an Arbitrator's decision . . . due to the failure of another party to abide by the decision . . . shall be reimbursed by the party failing to abide by the decision . . . for any attorneys' fees, court costs, and expenses incurred." Plan, Art. VII § 2(c). Under the Plan, because LIUNA sought (and won) enforcement of the Arbitrator's Award due to the failure of the Carpenters to abide by the Award, the Carpenters are required to reimburse LIUNA for attorneys' fees and costs for this enforcement action.

LIUNA submitted a Declaration of Fees and Costs seeking reimbursement from the Carpenters for legal services rendered by LIUNA's counsel, Guerrieri, Clayman, Bartos, and

Parcelli, P.C. ("GCBP"), and its local counsel in the State of Washington, McKay Chadell, PLLC. The primary attorneys assigned to this case were Joseph Guerrieri, Jr., and Elizabeth Roma. For 331.60 hours of legal services from April 2009 until August 2010, LIUNA seeks $95,480.11 ($91,612.00 in fees plus $3,868.11 in costs). *See* Decl. of Elizabeth Roma ("Roma Decl.") [Dkt. # 37] ¶26. LIUNA also seeks an additional $9,006.25 for 33.75 hours of legal services relating to the fee application. *Id.* ¶ 27. The Carpenters object.

## II. ANALYSIS

"The usual method of calculating reasonable attorneys' fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar'[3] amount." *Bd. of Trs. of Hotel & Restaurant Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). While there is a strong presumption that the lodestar figure represents a reasonable fee, the amount may be adjusted by a multiplier in rare and exceptional cases. *Id.* (quoting *Delaware Valley*, 478 U.S. at 565). The fee applicant bears the burden of demonstrating that the claimed rate and number of hours are reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

### A. Rates

"[A]n attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993). A rate determined this way is usually deemed to

---

[3] The "lodestar" approach to fee awards was established by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and is the approach followed by the federal courts in most fee award disputes. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002).

be reasonable and is referred to as the "prevailing market rate." *Blum*, 465 U.S. at 895 n.11. Given the variation in attorneys' skills and experiences, the prevailing market rate for established practitioners is higher than that for younger lawyers. *See id.*

Reasonable attorneys' fees include charges for legal assistants and law clerks. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("Thus, the fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit."). Various forms of litigation expenses that are not fees for attorneys' time — such as copying charges, court reporter fees, and travel costs — may also be included in the award if such expenses are routinely billed by the attorney to his or her client. *See New York v. Microsoft Corp.*, 297 F. Supp. 2d 15, 47-48 (D.D.C. 2003).

The *Laffey* Matrix[4] was developed by the United States Attorney's Office for the District of Columbia to track prevailing attorneys' hourly rates for complex federal litigation. It "creates one axis for a lawyer's years of experience in complicated federal litigation and a second [axis] for rates of compensation." *Griffin v. Wash. Convention Ctr.*, 172 F. Supp. 2d 193, 197 (D.D.C. 2001). The *Laffey* Matrix provides the prevailing market rates for complex federal litigation in the District of Columbia. *Covington*, 57 F.3d at 1109.

This suit was not "complex," but most of the rates charged were lower than the Laffey rates. The Laffey Matrix lists the rate for attorneys having more than 20 years of

---

[4] *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 74 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), as modified by *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988).

experience as $465 from June 2008 through May 2010, and subsequently higher. *See* Roma Decl., Ex. B (Laffey Matrix). Mr. Guerrieri, who has more than 30 years of experience representing labor organizations in state and federal court, billed LIUNA at the rate of $350 per hour. The paralegal who assisted the attorneys, Whitney McGuire, was charged out at a rate of $125 per hour, and the Laffey Matrix sets forth a threshold for a paralegal rate at $130 per hour from June 2008 to May 2010 and more thereafter.[5]

Only certain hourly rates charged for the services of Ms. Roma exceeded the Laffey rates. The Laffey Matrix lists the rate for attorneys who have four to seven years of experience as $270 from June 2008 to May 2010 and $275 from June 2010 to May 2011. Ms. Roma, who has more than six years of experience, billed LIUNA at the rate of $250 per hour before December 2009, a rate below the Laffey threshold. Ms. Roma charged $275 per hour after December 2009. This charge exceeded the Laffey threshold, and then when the Laffey rate was raised, met the threshold.

In sum, the hourly rates set forth in the fee affidavit and attached bills that were below prevailing market rates for this area for complex federal litigation are appropriate, as this case was not complex. Ms. Roma's rate that met or exceeded the Laffey threshold for complex cases was excessive. Accordingly, Ms. Roma's rate will be reduced to $250 per hour for the entire bill.

---

[5] McKay Chadwell provided 23.40 hours of legal services. Its attorneys, David Wilson and Thomas Brennan, were billed at proper rates based on their experience. Mr. Wilson has 35 years of experience and billed at the rate of $325 per hour. Mr. Brennan has 10 years of experience and billed at $280 per hour. *See* Roma Decl. ¶ 25.

## B. Number of Hours Billed and Sufficiency of Information Provided

Fee applications must "include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any." *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989). A fee applicant may satisfy its burden of demonstrating that its time was reasonably spent by submitting "'sufficiently detailed information about the hours logged and the work done' that permits the district court to 'make an independent determination whether or not the hours claimed are justified.'" *Cobell v. Norton*, 231 F. Supp. 2d 295, 306 (D.D.C. 2002) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). The application need not, however, "present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Cobell*, 231 F. Supp. 2d at 306.

The number of billable hours in a fee application may be reduced for failure to allocate tasks efficiently among attorneys based on their experience, *i.e.*, where research tasks are performed by relatively senior attorneys more frequently than seems justifiable, or where some attorneys' efforts have been duplicated by others. *Davis County Solid Waste Mgmt. & Recovery Special Serv. Dist. v. EPA*, 169 F.3d 355, 761 (D.C. Cir. 1999). Further, "[h]ours may also be rejected when work descriptions are so general that a court cannot ascertain the reasonableness of the time claimed." *Id.* If a court determines that duplication or waste of effort has occurred, it has the discretion to simply reduce the proposed fee by a reasonable amount without an item-by-item accounting. *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998). Outright denial of a fee request or an item within the request is appropriate where a court finds that particular fee request "outrageously unreasonable." *Id.*

GCBP keeps appropriate contemporaneous time records reflecting the date, hours spent, and the nature of the work done, in quarter-hour increments. Roma Decl. ¶ 9. The relevant itemized billing statements are attached as Exhibits to Ms. Roma's Declaration. The Carpenters claim that these billing statements set forth vague descriptions and contain "block billing" which inappropriately lumps distinct tasks together. The Court disagrees. The billing statements provide sufficient detail to permit the Court to "make an independent determination whether or not the hours claimed are justified." *Cobell*, 231 F. Supp. 2d at 306. The billing descriptions can be read in context, with clarification coming from surrounding billing entries as well as the docket. *Heard v. District of Columbia*, Civ. No. 02-296 (CKK), 2006 WL 2568013, at *14-15 (D.D.C. Sept. 5, 2006). Further, the case was properly staffed; the majority of the work was done by one associate, Ms. Roma. The fee for services from April 2009 to August 2010 already was appropriately reduced for services relating only to the litigation against Brand, for certain travel costs (for District of Columbia counsel to travel to Washington), and for certain services rendered by local counsel (to avoid duplicate billing). *See* Roma Decl. ¶¶ 21-23, 25.

Even so, the Court does find that the 33.75 hours billed for the work related to the fee petition is excessive. The preparation of the fee application consisted of gathering bills, drafting an affidavit, and drafting a reply to the Carpenters' objections. These straight-forward tasks could have been accomplished in half the time. Accordingly, LIUNA's request for fees and costs associated with the fee petition will be reduced by 50%. Thus, the Carpenters will reimburse LIUNA for fees and costs related to the fee application in the amount of $4,503.13, and not in the amount of $9,006.25 as LIUNA requested.

## III.  CONCLUSION

Accordingly, LIUNA's application for attorneys' fees and costs [Dkt. # 37] will be granted in part and denied in part as set forth above.  For legal services related to the fee application, the Carpenters shall pay LIUNA $4,503.13 in fees and costs.  For legal services from April 2009 until August 2010, LIUNA shall recalculate the attorneys' fees and costs to account for the reduction in Ms. Roma's hourly rate and shall submit a proposed order consistent with this Opinion.

Date: October 25, 2010                                  /s/
                                                                ROSEMARY M. COLLYER
                                                                United States District Judge